DISTRICT OF OREGON
FILED
December 30, 2014
Clerk, U.S. Bankruptcy Court

Below is an Opinion of the Court.

ELIZABETH PERRIS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| In Re: JAMES ADOLFO MOGLIA, Debtor. | Bankruptcy Case No. 11-35022-elp13 MEMORANDUM OPINION |
|---|---|

This matter came before the court on creditor Tim Mouraveiko's Motion to Modify Plan ("Motion")(ECF No. 329), which requests four modifications to debtor James Moglia's confirmed chapter 13[1] plan. Mouraveiko seeks to: (1) extend the time for debtor to make plan payments from 36 to 60 months; (2) require debtor to make retroactive payments of additional disposable income into the plan; (3) increase the "best interest of creditors" liquidation figure in the plan because debtor allegedly failed at confirmation to disclose his interest in two vacant lots; and (4) assuming that modification (1) is granted, require debtor

[1] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code.

to make increased disposable income payments over the extended life of the plan. Debtor and the chapter 13 trustee subsequently filed Objections to the Motion (ECF No. 334; ECF No. 335). The court held a hearing on August 29, 2014, at which it requested supplemental briefing on two legal issues raised by the Motion:

(1) Whether, under a confirmed plan, debtor must pay amounts necessary to satisfy both the "best interest of creditors" test in § 1325(a)(4) and the "best efforts" test in § 1325(b)(1)(B), or whether instead debtor must satisfy whichever requirement yields the higher amount; and

(2) Whether the applicable commitment period for the chapter 13 plan payments must be extended from 3 years to 5 years when a debtor whose income is below median at the time of case filing has a subsequent increase in income to above the median.

After considering the briefing and the arguments at hearing, and for the reasons set forth below, I will deny the Motion.

## LEGAL ANALYSIS

### A. <u>General Background for Chapter 13 Confirmation</u>

Section 1325 provides the requirements for plan confirmation. As relevant in this case, § 1325(a)(4), commonly known as the "best interest of creditors" test, mandates that unsecured creditors in a chapter 13 case receive at least as much through the plan as they would in a hypothetical chapter 7. If an unsecured creditor or the trustee objects to confirmation, unsecured creditors must receive through a chapter 13 plan either 100% of their allowed claims, <u>see</u> § 1325(b)(1)(A), or "all of the debtor's projected disposable income to be received in the applicable

commitment period."[2] § 1325(b)(1)(B). The "applicable commitment period" is determined by a debtor's "current monthly income." § 1325(b)(4). Section 101(10A) defines "current monthly income" as the average monthly income from all sources (subject to enumerated exclusions) that the debtor receives during the six-month period before filing for bankruptcy. The debtor's current monthly income is then annualized and compared to the median income for a household of equal size in the same state. § 1325(b)(4). If a debtor's annualized income is less than the median, then his or her applicable commitment period is 36 months. § 1325(b)(4)(A)(i). If it is equal to or greater than the median, then the applicable commitment period is 60 months. § 1325(b)(4)(A)(ii). The court can make adjustments to the amount of projected disposable income that must be paid to unsecured creditors during the applicable commitment period if changes to the debtor's income or expenses are "known or virtually certain at the time of confirmation." Hamilton v. Lanning, 130 S. Ct. 2464, 2478 (2010).

B. Requirements and Standard for Plan Modification

Section 1329(a) states that a plan "may" be modified after confirmation to increase a debtor's payments or to extend the time for such payments. The length of a modified plan is subject to § 1329(c), which states (as relevant in this case) that a modified plan may not provide for payments over a period that expires after the applicable commitment period under § 1325(b)(1)(B), unless the court, for cause,

---

[2] This latter test is commonly known as the "best efforts" test or the "disposable income" test. This opinion will refer to the test as the "best efforts" test.

approves a longer period. Section 1329(b)(1) lists the bankruptcy code sections that apply to any modified plan proposed under § 1329(a). Absent from the list is § 1325(b). Courts in this circuit have interpreted this absence as meaning that the "best efforts" test in § 1325(b)(1)(B) does not need to be satisfied with respect to modified plans. In re Sunahara, 326 B.R. 768, 781 (B.A.P. 9th Cir. 2005).

Modification is discretionary, In re Mattson, 468 B.R. 361, 366 (B.A.P. 9th Cir. 2012), and predicated on the court's good judgment in reviewing the motion to modify and the attendant circumstances. In re Powers, 202 B.R. 618, 622 (B.A.P. 9th Cir. 1996).

C. Extension of the Plan's Applicable Commitment Period

Mouraveiko first seeks to modify the plan to extend the plan's applicable commitment period from 36 to 60 months. I hold that there is not "cause" under § 1329(c) to extend debtor's plan payments from 36 to 60 months.

As an initial matter, I reject Mouraveiko's argument that debtor was actually an above-median debtor at the time of confirmation, so the appropriate applicable commitment period should be 60 months. Debtor timely filed his form B22C (Statement of Current Monthly Income) (ECF No. 13), which shows that debtor's income was below the median during the applicable six-month lookback period and that the applicable commitment period is 36 months. If Mouraveiko disputed the determination that debtor's income was below the median and thought that the applicable commitment period should have been 60 months, then the proper time to raise that objection was at confirmation.

Mouraveiko relies on In re Flores, 735 F.3d 855 (9th Cir. 2013), for the proposition that the applicable commitment period should be 60 months. The Flores holding applies to a debtor who, according to the form B22C filed at case initiation, has above-median income. As explained above, debtor did not have above-median income at the time of case initiation.

Relatedly, Mouraveiko argues that the applicable commitment period could be shortened to 36 months only because unsecured creditors were to receive 100% of their claims, and now that he is receiving less than 100% of his claims, a 36-month duration is inappropriate. This is not so; the 36-month applicable commitment period was a result of debtor being below the median income, not because the plan would pay all unsecured creditors in full.[3]

The applicable commitment period is not a moving target. Sunahara holds that § 1325(b), which includes the applicable commitment period calculation in § 1325(b)(4), does not apply to a modified plan. If § 1325(b)(4) does not apply to a modified plan, then the applicable commitment period cannot change merely because debtor's income increased from below median to above median during the applicable commitment

[3] Mouraveiko's confusion arises from the fact that debtor's plan (ECF No. 14) states in paragraph 2(f)(1) that "creditors will receive approximately 100% of their claims." The term "approximately 100%" is not a guarantee that creditors will actually receive 100% of their claims. If debtor had wanted to assure a 100% distribution to creditors, he would have selected paragraph 2(f)(2), not paragraph 2(f)(1). The "approximately 100%" language is not, as Mouraveiko argues, to satisfy the § 1325(b)(1)(A) requirement that objecting unsecured creditors must receive 100% of their claims.

period. A leading bankruptcy treatise confirms this:

> Because current monthly income does not change during the case -- it remains, by definition in section 101, the average income for the six months before the petition -- the debtor cannot be forced to change the commitment period if the debtor's income later changes from below median income to above median income.

8 Collier On Bankruptcy ¶ 1325.11[4][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013).

I acknowledge that § 1329(a)(2) allows the plan to be modified to extend the time for plan payments, and § 1329(c) allows the court, for cause, to approve a longer period than the 36-month applicable commitment period to make those payments. But I interpret these provisions as allowing more time to make payments on a 36-month plan (such as if a debtor needs additional time to cure mortgage arrearages or finish paying off a car), not allowing a change of the applicable commitment period from 36 to 60 months at the instigation of a creditor seeking to increase his recovery. None of the extensive case law to which Mouraveiko cites offers an example of the applicable commitment period being extended on a creditor's motion, and despite protracted research, this court could find no such example. The only case that I located in which an unsecured creditor successfully modified a plan to increase the payment period, In re Arnold, 869 F.2d 240 (4th Cir. 1989), is of limited relevance because it predates BAPCPA,[4] and the "applicable commitment period" is a concept that arose under BAPCPA.

---

[4] Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), which substantially amended parts of the Bankruptcy Code, including § 1325(b), in 2005.

Assuming without deciding that this court has the power to extend the applicable commitment period at the behest of a creditor seeking to increase his recovery, I would still deny Mouraveiko's first requested modification, because he has failed to demonstrate cause under § 1329(c). Even if Mouraveiko's allegations of debtor's substantially increased income during the applicable commitment period are correct (and there is a genuine dispute as to his figures), the projected disposable income payments over the additional 24-month period, when added to the disposable income payments already made by debtor through the plan, would still fall short of the "best interest of creditors" number in this case.[5]

Debtor has already paid $10,800 of disposable income into the plan ($300/month x 36 months). Mouraveiko would have debtor retroactively pay $107,408.25[6] in disposable income into the plan. He would also have debtor pay $199,344[7] in future disposable income into the plan ($8,306 in monthly disposable income x 24-month extension of applicable commitment period). Even under this best-case scenario for Mouraveiko, unsecured creditors would receive $317,552.25 via the "best efforts" test -- less than what they will currently receive per the "best interest" number of $358,463 in debtor's plan (ECF No. 14).

---

5 As discussed infra in Part D, the court holds that these requirements are not cumulative, contrary to Mouraveiko's argument.

6 See Motion at 3-5 (ECF No. 329).

7 See id. at 5.

These calculations suffice to satisfy me that there is not cause to extend the applicable commitment period pursuant to § 1329(c).

D. Retroactive Payment of Disposable Income

Second, Mouraveiko proposes to modify the plan to require debtor to make retroactive payments of additional disposable income into the plan. I hold that there is not sufficient cause to require debtor to make these payments.

Mouraveiko argues that the "best interest of creditors" test from § 1325(a)(4) and the "best efforts" test from § 1325(b)(1)(B) are cumulative: the disposable income payments captured through the plan are above and beyond the "best interest" number that debtor is required to pay. He effectively argues that any disposable income that debtor has (or should be required) to pay into the plan does not count toward satisfying the "best interest" number.

I disagree. Mouraveiko misunderstands the protection to creditors that § 1325(b)(1)(B) offers. Chapter 13 allows a debtor to retain non-exempt equity by effectively buying such equity on the "installment plan." This allows a debtor to retain property, such as a house or a car, that the debtor would otherwise have to surrender. Unsecured creditors are no worse off than they would be in a chapter 7, because the "best interest of creditors" test requires them to receive at least the liquidation value of the debtor's hypothetical chapter 7 case. In this way, the "best interest of creditors" test acts as a floor: it is the minimum amount that creditors must receive in a chapter 13.

The "best efforts" test, by contrast, functions as a ceiling. It

insures that plan completion is feasible and that a debtor with relatively few assets (and thus a comparatively low "best interest of creditors" number), a high income, and large amounts of unsecured debt will make meaningful payments to creditors in a chapter 13. If a debtor can pay more than the "best interest of creditors" number to unsecured creditors, then § 1325(b)(1)(B) makes certain that the debtor will pay them more than the "best interest of creditors" number. If Mouraveiko were correct that the payments required by § 1325(a)(4) and § 1325(b)(1)(B) are cumulative, then a debtor would never have sufficient money under the plan to pay for the assets that he or she is trying to keep. The debtor would have to liquidate non-exempt assets for the benefit of unsecured creditors in order to satisfy the "best interest" number, as all of the debtor's disposable income would have to be used to meet the "best efforts" requirement.

The treatises and case law also suggest that the requirements are not cumulative:

> The amount paid to unsecured creditors must meet both the best interest test [in § 1325(a)(4)] and the projected disposable income ["PDI"] test [in § 1325(b)(1)(B)], but the same payments from income used to satisfy the PDI test will also satisfy the best interest test. For example, if the PDI test requires the debtor to pay $200 per month to unsecured creditors over 60 months, a total of $12,000, and payments of $200 per month are also sufficient to satisfy the best interest test, the plan meets the requirements of both tests.

W. Homer Drake, Jr. et al., Chapter 13: Practice And Procedure, § 8:1 (Westlaw, updated December 2014).

> From the perspective of an objecting unsecured creditor, section 1325(a) provides that a plan must be confirmed if unsecured creditors will receive the present value of the dividend payable in a chapter 7 case unless the debtor's projected disposable income

> over three years would pay a higher dividend. If a debtor's future disposable income will pay more than the liquidation dividend, confirmation must be withheld unless the plan provides for the higher dividend.

In re Keller, 329 B.R. 697, 702 (Bankr. E.D. Cal. 2005)(emphasis added).

> Although the debtor's proposed Plan payments satisfy section 1325(a)(4), the trustee or unsecured creditors may still object to Plan confirmation on the ground that under section 1325(b)(1), the debtor has the ability to and must pay a greater dividend to the unsecured creditors. While section 1325(a)(4) establishes the minimum amount a Chapter 13 debtor must pay into the Plan, under section 1325(b)(1) a debtor may be required to pay even more to the unsecured creditors.

In re Miller, 247 B.R. 795, 797 (Bankr. W.D. Mo. 2000)(emphasis added).

> The disposable income test in § 1325(b) functions independently of the best-interests-of-creditors test in § 1325(a)(4) -- the plan must satisfy both tests to accomplish confirmation. Often the disposable income test requires greater payments to creditors than the best-interests-of-creditors test standing alone.

Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy § 163.1 (4th ed. Rev. June 14, 2014), www.Ch13online.com.

I note the language in Miller that 1325(b)(1) "may require" a debtor to pay even more to the unsecured creditors, as well as the language in the Lundin treatise that the "best efforts" test will "often require" greater payments to creditors than the "best interest" test standing alone. Under Mr. Mouraveiko's theory, § 1325(b)(1)(B)'s "best efforts" test would always require a debtor to pay more than the "best interest" test standing alone. The "best interest" figure would be the floor, and the debtor's disposable income payments would then be stacked on top of this floor. Miller's "may require" and Lundin's "often require" language would be nonsensical under this interpretation.

E. Increase the "Best Interest" Number

Mouraveiko also proposes to modify the plan to increase the "best interest" figure in the plan because debtor allegedly failed at confirmation to disclose his interest in two vacant lots. Specifically, Mouraveiko alleges that debtor willfully concealed the existence of these vacant lots and made inaccurate representations on his bankruptcy Schedule A. These misrepresentations allegedly allowed a substantial reduction of the "best interest" figure at the time of debtor's plan confirmation.

Importantly, Mouraveiko does not allege that debtor acquired postconfirmation assets. Rather, he alleges that debtor concealed his ownership interest in the assets at the time of confirmation. Mouraveiko cited to no authority, and I could find none, that suggested that a debtor's concealment of preconfirmation assets is an appropriate basis for a § 1329 motion that modifies the best interest number.
The issue is better cast under § 1330: revocation of a confirmation order if such order was procured by fraud. See In re Valenti, 310 B.R. 138 (B.A.P. 9th Cir. 2004)(analyzing § 1330 in the context of a debtor who hid preconfirmation income and concealed her preconfirmation beneficial interest in real property). However, § 1330(a) sets a deadline of 180 days from the date of entry of the confirmation order for a party in interest to seek revocation. It does not matter if creditors allege that the debtor concealed any misconduct. Valenti, 310 B.R. at 145. The 180-day bar applies to prevent revocation of confirmation even if the fraud is not discovered until the period has passed. Id.

Mouraveiko is well outside of the 180-day period in which the court could grant a motion for revocation of the confirmation order pursuant to § 1330. I will deny the third proposed modification for these reasons.

F. Increase Future Disposable Income Paid Into Plan

Finally, Mouraveiko seeks modification to increase debtor’s plan payments for the duration of the proposed extended plan. This modification is denied because I have already denied the modification that would extend the plan from 36 to 60 months.

CONCLUSION

Debtor’s chapter 13 case has an applicable commitment period of 36 months, and it has now dragged on for more than three and a half years. Mouraveiko and debtor have bitterly contested, both in this court and in state court, a multitude of legal issues arising from this case. This ruling will close at least one chapter of the parties’ acrimonious story. The Motion to Modify Plan is denied.

###