## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF OREGON

**ELIZABETH L. PERRIS**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

October 15, 2015

James R. Streinz
McEwen Gisvold LLP
1100 SW Sixth Ave., Ste 1600
Portland, OR 97204

Tim Mouraveiko
5006 SW Pomona St.
Portland, OR 97219

Re: <u>In re Moglia</u>, Case No. 11-35022-elp13

Dear Messrs. Streinz and Mouraveiko:

On October 8, 2015, this court held an evidentiary hearing on creditor Tim Mouraveiko's motion for sanctions against attorney Jonathan Kuni (the "<u>Motion</u>," ECF No. 361) filed in the above-referenced case. I have considered the evidence and the parties' arguments, and write now to announce my ruling.

The parties are familiar with the factual background of the case, so I will not recount it here. Mr. Mouraveiko seeks four types of relief through the Motion: (1) sanctions under the court's inherent power, (2) sanctions under Fed. R. Civ. P. 37(b), (3) sanctions under 28 U.S.C. § 1927, and (4) disgorgement of fees under 11 U.S.C. § 330.

A.   <u>Background and Findings</u>

At the heart of the Motion is Mr. Mouraveiko's claim that Mr. Kuni failed to timely produce Butterfield Bank statements as required under the Order Granting Creditor's Motion to Produce Documents (the "<u>Order</u>," ECF No. 227). Mr. Kuni responds that he had provided an account transactional history that included the same information that was in the statements.

On July 3, 2013, Mr. Kuni represented to the court that Debtor did not receive periodic statements from Butterfield Bank. In response to questioning from Mr. Mouraveiko, Mr. Kuni later admitted in his deposition that he had received (and retained) pre-petition Butterfield Bank statements from the Debtor. It is true that those statements were outside the time period covered by the Order, but their very existence should have led Mr. Kuni to conclude that Debtor is somehow capable of obtaining periodic

statements.  Mr. Kuni's representations ultimately had the effect of misleading the court and Mr. Mouraveiko.

Mr. Kuni also admitted to receiving some post-petition Butterfield Bank statements (which were within the scope of the Order) from Debtor in June 2013.  Mr. Kuni admits that he did not produce these statements to Mr. Mouraveiko because they were not filed correctly.  While this appears to have been an innocent mistake, there was ample time for Mr. Kuni to identify and correct his mistake, but instead the problem was not remedied until after Mr. Mouraveiko filed his Motion.

I am also troubled by Mr. Kuni's practices in redacting account numbers in the Butterfield Bank documents that he produced to Mr. Mouraveiko.  Given the history of this case, Mr. Kuni was no doubt aware that Mr. Mouraveiko's primary concern in seeking financial records was to trace Debtor's fund transfers and search for potential undisclosed assets.  As part of his discovery, Mr. Mouraveiko needed to be able to differentiate between Debtor's different accounts at Butterfield Bank.  Consistent with protecting Debtor's privacy, the Order allowed (but did not require) redaction of all but the last 4 digits of account numbers.  This convention of masking is typical in U.S. courts (see e.g., Fed. R. Bankr. P. 9037(a)(4)) because the last four digits are usually sufficient for purposes of differentiating between multiple accounts.  But at the evidentiary hearing, Mr. Mouraveiko proved that Debtor did have more than one account at Butterfield Bank, and that the bank's account-numbering convention was designed so that different accounts frequently have same four terminal digits (in other words, the distinguishing characters were in the earlier part of the account number).

As one of a small number of people with access to the unredacted documents, Mr. Kuni was responsible for identifying this unusual feature of Butterfield Bank's numbering convention, and alerting the court that normal redaction practices would need to be modified.  As an officer of the court, Mr. Kuni was required to ensure that redactions would be used only to protect Debtor's privacy, and not to hinder Mr. Mouraveiko's legitimate discovery activities.  Mr. Kuni failed to discharge these duties, and as a result, Mr. Mouraveiko's discovery became much more laborious than it needed to be.

Mr. Mouraveiko also alleges that Mr. Kuni misrepresented the number of accounts Debtor held at Butterfield Bank.  At the outset, it should be acknowledged that Butterfield's banking practices are somewhat confusing and that Mr. Kuni cannot be

expected to have a comprehensive knowledge of procedures at offshore financial institutions. Furthermore, Mr. Kuni is allowed to rely on statements of his client, absent facts that would lead a reasonable attorney to doubt on their truthfulness. Nonetheless, Mr. Kuni did have access to certain information (specifically, pre-petition bank statements, deposit confirmations, and the Butterfield Bank transaction history) that would lead a reasonable bankruptcy practitioner to conclude that Debtor likely held at least two different accounts at Butterfield Bank. Even though Mr. Kuni should have conceded this issue long ago, his failure to do so did not cause substantial damages because Mr. Mouraveiko was quite capable of proving that there were multiple accounts. Most importantly, based on evidence in the record, it appears that the total amount of money that Debtor had on deposit with Butterfield Bank on the petition date was accurately reported on his bankruptcy schedules. Accordingly, there was no material damage as a result the representations regarding the number of accounts, and sanctions are not warranted beyond the reduction of attorney fees and required disgorgement provided below.

Mr. Mouraveiko also bases the Motion on the allegation of still-undisclosed accounts. Mr. Mouraveiko has not proven that such accounts exist; let alone proving that Mr. Kuni knew of them. Accordingly, no sanctions will be awarded on the basis of concealed assets.

B.  <u>Sanctions</u>

As stated in the above findings, Mr. Kuni made material misrepresentations regarding the existence of periodic bank statements, failed to timely produce documents that were responsive to the Order, and redacted account information in a manner that unreasonably complicated Mr. Mouraveiko's discovery. While these actions all support an award of sanctions, arriving at the appropriate response is more complicated.

1.  <u>Inherent-Power Sanctions and 28 U.S.C. § 1927</u>

Mr. Mouraveiko has not proven that Mr. Kuni acted in bad faith. As a result, sanctions are not available under the court's inherent power or 28 U.S.C. § 1927.

This court's inherent-power sanctions are grounded in § 105 of the Bankruptcy Code, which allows bankruptcy courts to carry out the provisions of the Code and enforce court orders. A bankruptcy court's power to sanction under § 105 is coextensive with the inherent power of District Courts, as recognized by the

Supreme Court in <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32 (1991). <u>Caldwell v. Unified Capital Corp.</u> (<u>In re Rainbow Magazine, Inc.</u>), 77 F.3d 278, 283-284 (9th Cir. 1996).

The Ninth Circuit has read <u>Chambers</u> to authorize sanctioning "bad-faith conduct in litigation when that conduct falls outside the scope of Federal Rule of Civil Procedure 11 or 28 U.S.C. § 1927." <u>Id.</u> at 283. Similarly, sanctions under § 1927 must be based on bad faith, not mere negligence. <u>MGIC Indem. Corp. v. Moore</u>, 952 F.2d 1120, 1122 (9th Cir. 1991) (reversing district court's award of sanctions because factual findings could be equally construed as negligence or bad faith).

The evidence shows that Mr. Kuni was caught in an unenviable situation: he was ethically and contractually obligated to advocate for a difficult client, while simultaneously dealing with an ever-growing list of demands from a difficult pro se litigant. Mr. Kuni did make mistakes, but nothing indicates that these mistakes were motivated by bad faith. To the contrary, I find Mr. Kuni's testimony credible that he was genuinely focused on determining whether the Debtor had concealed assets.

2. <u>Rule 37(b)</u>

Federal Rule of Civil Procedure Rule 37(b) (applicable here through Federal Rules of Bankruptcy Procedure 9014(c) and 7037) allows a trial court to impose sanctions when a party fails to obey a discovery order. Fed. R. Civ. P. 37(b)(2)(A). The Ninth Circuit has held that Rule 37(b) can be used to sanction an attorney as well as a party. <u>U.S. v. Sumitomo Marine & Fire Ins. Co.</u>, 617 F.2d 1365, 1369 (9th Cir. 1980).

Among the various sanctions authorized under Rule 37(b), the only monetary sanction expressly mentioned is an order "to pay the reasonable expenses, including attorney's fees, caused by the failure" to comply with a discovery order. Fed. R. Civ. P. 37(b)(2)(C). Some courts have concluded that violations of discovery rules can be punished by a fine payable to the court. <u>U.S. v. Shaffer Equip Co.</u>, 158 F.R.D. 80, 87 (S.D.W.Va. 1994). But I have found no authority indicating that Rule 37(b) can be used to disgorge attorney fees earned by sanctioned attorney.

Although I will award Mr. Mouraveiko his costs in bringing the Motion, this is not a particularly effective sanction because, as a pro se litigant, he has no attorney fees. This is an undesirable result, because it would essentially allow attorneys greater leeway to flout discovery rules when dealing with unrepresented parties, because of the muted consequences.

As discussed in the following section, the Bankruptcy Code provides the court with the ability to fashion an equitable result.

    3.    <u>Section 330</u>

Section 330(a) of the Bankruptcy Code allows compensation of estate professionals (including attorneys) only to the extent that their fees are reasonable. When determining reasonableness, bankruptcy courts must consider the amount of time spent on any particular problem, task, or issue, and whether the underlying services benefitted the estate. 11 U.S.C. § 330(a)(3)(D) and (a)(4)(A)(ii); <u>see also</u> <u>Everett v. Perez</u> (<u>In re Perez</u>), 30 F.3d 1209, 1219 (9th Cir. 1994) (Debtor's counsel's "responsibility is to help lead the estate on a just, speedy, inexpensive and lawful path out of bankruptcy. Failure to live up to this responsibility may result in a reduction in allowable fees and other sanctions.").

When Mr. Mouraveiko demanded a wide-ranging list of information from the Debtor, Mr. Kuni successfully persuaded the court to narrow the scope of discovery. He then failed to produce documents that the Debtor sent him, unreasonably redacted the documents he did produce, and failed to carefully consider and respond to Mr. Mouraveiko's concerns. As a result, Mr. Kuni protracted the discovery disputes with Mr. Mouraveiko, which has in turn prevented the prompt closing of this case. Accordingly, Mr. Kuni's handling of this particular issue has not benefitted the estate and his fees related to these discovery matters should be reduced.

I have analyzed Mr. Kuni's fee applications and identified total post-confirmation fees of $10,751.51 that relate to document production and Mr. Mouraveiko's discovery requests (including a Rule 2004 exam in July 2014). Of this amount, $2,992.75 clearly relates to issues other than the Butterfield Bank statements, leaving $7,758.76 that could conceivably be related to the sanctionable conduct. Of this reduced amount, $1,303.25 appears to be related to Mr. Mouraveiko's third motion for production of documents (ECF No. 278), which was entirely unrelated to the Butterfield Bank statements. After subtracting the amount attributable to the third motion, there is $6,455.51 (the "net discovery fees") left to account for.

The net discovery fees relate to a wide variety of activity, so it is not appropriate to disgorge the entire amount. Mr. Mouraveiko raised numerous issues in discovery, and the majority of Mr. Kuni's work was reasonable and beneficial to the estate. I conclude that Mr. Kuni should disgorge $3,250 of the net discovery fees as a sanction for his conduct relating to the

Butterfield Bank statements.  These disgorged fees should be returned to the Trustee for distribution to creditors, pursuant to § 329(b)(1).

    The court will enter an order contemporaneously with this ruling.

        Very truly yours,

        */s/ Elizabeth L. Perris*

        Elizabeth L. Perris
        Bankruptcy Judge