## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF OREGON

**ELIZABETH L. PERRIS**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

December 11, 2015

Jonathan C. Kuni
Kuni Donaldson LLP
1975 SW First Ave., Suite H
Portland, OR 97201

Tim Mouraveiko
5006 SW Pomona St.
Portland, OR 97219

Re: <u>In re Moglia</u>, Case No. 11-35022-elp13

Dear Messrs. Kuni and Mouraveiko:

    On October 30, 2015, this court held an evidentiary hearing on creditor Tim Mouraveiko's motion for sanctions (the "<u>Motion</u>," ECF No. 361). In the Motion, Mr. Mouraveiko asks the court to dismiss this case and impose monetary sanctions against the debtor, James Adolfo Moglia ("<u>Debtor</u>"). After I issued a letter opinion on November 19, 2015, Mr. Mouraveiko filed a Motion for Reconsideration Re: Opinion Doc. 457 (the "<u>Motion for Reconsideration</u>," ECF No. 458), to which Debtor responded on December 7, 2015 (ECF No. 462). Having considered the arguments in the Motion for Reconsideration and Debtor's response, I write now to deliver my amended ruling.

    The court may dismiss a chapter 13 case "for cause." 11 U.S.C. § 1307(c). There are eleven acts enumerated in § 1307(c) that provide non-exclusive examples of cause, none of which are present in this case. The Ninth Circuit has held that bad faith is also cause for dismissal under § 1307(c). <u>Leavitt v. Soto (In re Leavitt)</u>, 171 F.3d 1219, 1224 (9th Cir. 1999). In determining whether bad faith is present, the court should consider the following factors: (1) whether the debtor misrepresented facts in his petition or plan, unfairly manipulated the Code, or prosecuted his case in an inequitable manner, (2) the history of the debtor's filings, (3) whether the "debtor only intended to defeat state court litigation," and (4) whether egregious behavior is present. <u>Id.</u>

    Here, Debtor did not have a pattern of previous filings, did not manipulate the Code, and did not prosecute his case in an inequitable manner. While his state-court litigation with Mr. Mouraveiko was certainly a contributing factor to his bankruptcy

petition, it was not the only reason for filing (and because Mr. Mourveiko ultimately obtained a non-dischargeable state-court judgment, Debtor clearly did not succeed in defeating the litigation). Accordingly, the primary question before the court is whether Debtor misrepresented facts in his petition or behaved egregiously. Mr. Mouraveiko's Motion is premised on the allegation that Debtor has concealed substantial assets--an allegation that, if proven, would justify dismissal for bad faith.

As the party seeking dismissal and other sanctions, Mr. Mourveiko bears the burden of proof. Admittedly, this is a difficult task given that many key facts are within the control of Butterfield Bank, an offshore financial institution that is not easily susceptible to standard discovery procedures. Nonetheless, this challenge does not relieve Mr. Mouraveiko of his duty to prove that Debtor is guilty of bad faith. See In re Malget, 165 B.R. 933, 936 (Bankr. S.D. Cal. 1994)("[T]he fact that proof is difficult to obtain or that a party whose testimony is essential is unavailable does not relieve the party who has the burden of proof from carrying that burden.").

While it is clear that Mr. Mouraveiko bears the burden of proof, it is less clear what the applicable standard of proof is. The Ninth Circuit has not ruled on whether misconduct that forms the basis for sanctions must be proven by clear and convincing evidence or merely by a preponderance of the evidence. Lahiri v. Universal Music & Video Distrib. Corp., 606 F.3d 1216, 1219 (9th Cir. 2010). Proof "by the preponderance of the evidence means that it is sufficient to persuade the finder of fact that the proposition is more likely than not." U.S. v. Arnold & Baker Farms (In re Arnold & Baker Farms), 177 B.R. 648, 654 (9th Cir. BAP 1994). Proof by "clear and convincing evidence is a higher standard requiring a high probability of success." Id. For the sake of analysis I have assumed, without deciding, that Mr. Mouraveiko bears the lower burden of proof and I will apply the preponderance standard. Mr. Mouraveiko has not met the preponderance standard.

Throughout his prosecution of this Motion, Mr. Mourveiko has raised numerous questions regarding Debtor's veracity. While these questions are well-founded, the court does not find that Mr. Mouraveiko has proven that bad-faith conduct is more likely than not. The crux of Mr. Mouraveiko's allegations is that Debtor has concealed funds that he inherited from his late mother. Debtor admits to inheriting the funds a year or two after his mother's death in 1999, but has not provided a comprehensive accounting of what happened to the money and how

much, if any, remains.  Mr. Mouraveiko insists that these funds remain in Debtor's possession but were not disclosed to the bankruptcy court.  This could be true, but such a finding must be supported by more than a bare allegation.  One important fact is that Debtor filed his bankruptcy petition in 2011, approximately ten years after receiving the inheritance.  There are many innocent explanations for what could have happened to the inheritance money during the intervening time.

Another important fact is that Debtor's schedule B reports over $1.3 million in cash, bank accounts, and brokerage accounts, some of which could be attributable to the inheritance.  Mr. Mouraveiko points to a number of inconsistent statements that Debtor or his attorneys have made over the years regarding the disposition of the inheritance funds, but this does not amount to egregious behavior.  Especially given the amount of time that has elapsed since the funds came into Debtor's possession, Mr. Mouraveiko cannot use inconsistent statements as a substitute for actual evidence of concealed assets.

Although this court cannot and will not make an affirmative finding regarding where the remaining inheritance funds (if any) are located, Mr. Mouraveiko is adamant that the funds cannot, as a matter of law, be held in Debtor's savings account at Butterfield Bank.  Both at trial and in his Motion for Reconsideration, Mr. Mouraveiko insists that the Oregon Circuit Court for Multnomah County found that this Butterfield Bank account was a trust fund held for the benefit of Mr. Mouraveiko.  After carefully reading the Circuit Court's opinion, I do not agree with Mr. Mouraveiko's characterization of that court's findings.

The relevant findings and conclusions of the Circuit Court were filed in the related adversary proceeding <u>Mouraveiko v. Moglia</u>, as exhibits to Mr. Mouraveiko's Motion for Partial Summary Judgment (the "<u>MSJ</u>," Adv. Proc. 11-3306, ECF No. 83).  It is true that, as a result of Mr. Mouraveiko's Third Motion for Sanctions in state court, Judge Litzenberger ordered "the following facts are conclusively established: [Debtor's company] Computer Friends held funds for Plaintiff's benefit in an account at Butterfield Bank that was identified as the Carina account owned by James Moglia."  MSJ, Exh. B at 9.  This conclusive finding merely established that Debtor held "funds" (in an unquantified amount) for Mr. Mouraveiko; the court did <u>not</u> find that the entire balance of any given account was held in trust.  Any doubt about the meaning of this statement is easily resolved by Judge Liztenberger's findings, following trial, that "Mouraveiko did not establish the amount or portion of his wages

that were to be held in trust, which is why the Court declined to find an express or implied contract." Id., Exh. A at 25. In the absence of concrete evidence, the state court awarded Mr. Mouraveiko $120,000 under an unjust enrichment theory. Id. at 25-26. Also reinforcing my reading of the Circuit Court's opinion is the disposition of Mr. Mouraveiko's claim for breach of fiduciary duty. The state court agreed that Debtor breached his fiduciary duty "by transferring funds designated as unpaid wages in the Butterfield Bank 'Carina' account into an account held by himself and his son Paul." Id. at 28. The court then concluded that Mr. Mouraveiko's damages as a result of this breach equaled the $120,000 in wages he was entitled to under the unjust enrichment theory. Id. Notably, the court had already found that the total amount of money transferred from the Carina account to Debtor's personal account was $297,424.08. Id. at 10. The fact that Mr. Mouraveiko's damages were $120,000 necessarily means that the amount on deposit with Butterfield Bank (an amount that exceeded $120,000) did not consist solely of Mr. Mouraveiko's trust funds.

This is not to say that Mr. Mouraveiko did not raise some serious questions about abnormalities in Debtor's financial records. There is not a crystal-clear accounting of what happened to the inheritance money. And the apparent lack of any interest accrual in the Carina account between November 2002 and May 2003 is perplexing. These unanswered questions amount to "smoke," and Mr. Mourveiko would have the court rule that where there is smoke, there is fire. But this inferential reasoning does not satisfy Mr. Mouraveiko's burden of proof. It is possible the Debtor is concealing assets, but it is equally if not more likely that the inconsistencies identified by Mr. Mouraveiko are the result of non-sanctionable conduct.

Debtor has complied with the terms of his confirmed plan, and there is no evidence in the record of bad faith or other egregious behavior that would justify sanctions. Accordingly, the court will deny Mr. Mouraveiko's Motion. The court declines to modify that outcome based upon the Motion for Reconsideration, although the opinion is modified as provided herein. Counsel for Debtor should upload an order denying the Motion for Sanctions and the Motion for Reconsideration within fourteen days of this opinion.

Very truly yours,

*Elizabeth L. Perris*
Elizabeth L. Perris
Bankruptcy Judge